UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELDRIDGE WALKER, JR.,

     Petitioner,

v.                                                    Case No. 2:20-cv-813-JES-KCD

SECRETARY, DOC,

     Respondent.

_____

## OPINION AND ORDER

This case is before the Court on a 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Eldridge Walker, Jr. ("Walker" or "Petitioner"), a prisoner of the Florida Department of Corrections. (Doc. 1). Respondent, Secretary of the Florida Department of Corrections ("Respondent"), filed a response in opposition to the petition (Doc. 8), and Walker filed a reply and amended reply. (Doc. 11; Doc. 12).

After carefully reviewing the parties' briefs and the entire state-court record, the Court finds that Walker is not entitled to federal habeas corpus relief. Further, because the Court was able to resolve all claims on the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

### I. Background and Procedural History

On May 21, 2014, the State of Florida charged Walker by amended information with one count of robbery. (Doc. 8-2 at 18-19). A jury found him guilty as charged. (Id. at 341). The

trial court sentenced Walker as a habitual violent felony offender to fifteen years in prison.  (Id. at 362–63, 368–74).  Florida's Second District Court of Appeal ("Second DCA") affirmed per curiam without a written opinion.  (Id. at 378).

Thereafter, Walker filed a petition alleging ineffective assistance of appellate counsel, which the Second DCA denied. (Doc. 8-2 at 419, 466).  Walker then filed a motion under Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion").  (Id. at 468).  The postconviction court summarily denied three grounds as conclusively refuted by the record, denied a fourth ground with leave to amend as insufficiently pleaded, and granted a hearing on one ground.  (Doc. 8-2 at 756–64).  The postconviction court summarily denied Walker's amended ground. (Id. at 989–993).  After holding an evidentiary hearing on the remaining claim (id. at 1032–85), the postconviction court entered a final order denying relief.  (Id. at 1087–90).  The Second DCA affirmed per curiam without a written opinion.  (Doc. 8-2 at 1093).

Walker filed this petition on October 7, 2020.  (Doc. 1 at 13).[1]

---

[1] Under the "mailbox rule," a pleading is considered filed by an inmate on the date it was delivered to prison authorities for mailing, which—absent contrary evidence—is the date it was signed. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). In this case, the petition was stamped as provided to Desoto Correctional Institution for mailing on October 7, 2020.  (Doc. 1 at 13.)

## II.  Governing Legal Standards

### A.   The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  In this context, clearly established federal law consists of the governing legal principles, and not the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.  White v. Woodall, 572 U.S. 415, 420 (2014); Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court precedent; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an unreasonable application of the Supreme Court's precedents if the state court correctly

identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) (quoting Williams, 529 U.S. at 406).

The standard for relief under 28 U.S.C. § 2254(d) is both mandatory and difficult to meet. To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 572 U.S. at 420 (quotation marks omitted). Moreover, when reviewing a section 2254(d) claim, a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits and — warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Generally, in the case of a silent affirmance,

a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion.  See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 806 (1991); <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).  However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance.  <u>Sellers</u>, 138 S. Ct. at 1196.

### B.   Ineffective Assistance of Counsel

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  466 U.S. 668, 687–88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness <u>and</u> that the deficient performance prejudiced the defense.  <u>Id.</u>  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. <u>Burt v. Titlow</u>, 571 U.S. 12, 15 (2013).

The focus of inquiry under <u>Strickland</u>'s performance prong is "reasonableness under prevailing professional norms."  <u>Id.</u> at 688. In reviewing counsel's performance, a court must presume that

"counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690). Proving Strickland prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687. When evaluating an ineffective assistance of counsel claim, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697.

### III. Discussion

To better understand Walker's claims, a summary of pertinent facts—as recounted in the state's brief on direct appeal—follows:

> On December 1, 2013, Mr. Raphael Galety, the robbery victim in this case, was driving down Broadway Avenue between Unity Avenue and Moreno Avenue in Ft. Myers at approximately 6:30 p.m. A dog runs out into the street, and Mr. Galety's car hits the dog. The dog runs back to the house from where it came. Mr. Galety calls 911 to report the accident. Mr. Galety testified that he was told to pull the car off the road and park it. Mr. Galety testified that he got out of his car to find out what happened to the dog when he was approached by Walker and another man that Mr. Galety described as "Spanish dude."

According to Mr. Galety, Walker demanded money. Mr. Galety tells Walker, he has no money. Mr. Galety testified that Walker hits him in the face. Mr. Galety then gets hit by the "Spanish dude". Mr. Galety testified that he tried to stand up but he got hit again while Walker continued demanding money from him. Mr. Galety testified that when he stood up, his wallet was not in his pocket and his cell phone was missing. Mr. Galety testified that he was scared that they were going to hurt him.

. . .

Detective[s] then obtained a search warrant and returned to search [Walker's] residence for Mr. Galety's property. Detective Pooser testified that he found Mr. Galety's credit cards, identification card and cell phone inside the kitchen/dining room cabinet of the home.

(Doc. 8-2 at 406-07 (internal citations to the record omitted and slight alterations made for clarity)).

Walker now raises five claims (Grounds One through Five) of ineffective assistance of trial counsel ("Counsel") and one claim of trial court error (Ground Six). Respondent concedes that each claim was exhausted in state court. (Doc. 8 at 8).[2] For the ineffective assistance claims raised in Walker's Rule 3.850 Motion and rejected by the postconviction court, this Court will "look through" the Second DCA's silent affirmance and consider the lower

---

[2] "An application for a writ of habeas corpus on behalf of a person in [State custody] shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Because Respondent concedes exhaustion and the Court's independent review of the record supports a conclusion that each of Walker's claims was fully exhausted in state court, this Court will not further address the issue of exhaustion in this Order.

court's rationale for denying those claims.  See <u>Sellers</u>, 138 S. Ct. at 1192.

Walker exhausted Ground Six by raising it on direct appeal. The Second DCA affirmed Walker's conviction without a written opinion.  A state court's denial of a claim raised on direct appeal does not require a written opinion from the state appellate court to be entitled to section 2254(d) deference.  See <u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011).  Rather, in the case of a silent affirmance, "a habeas court must determine what arguments or theories . . . <u>could have supported the state court's decision</u>; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court decision]." <u>Id.</u> at 102 (emphasis added).  Therefore, for Ground Six, this Court will consider whether Walker has met his burden of showing "no reasonable basis for the state court to deny relief." <u>Id.</u>

### A.   Ground One

Walker asserts that Counsel was ineffective for failing to call Feron Alexander as a defense witness at his trial.  (Doc. 1 at 4.)  He claims that Ms. Alexander would have testified that she took the victim's property and brought it into her house for safekeeping.  (<u>Id.</u>)  Walker claims that, since the crime of robbery (as opposed to battery) was predicated on the taking of the victim's property, Ms. Alexander's testimony would have shown

that she (Ms. Alexander) was acting as a good Samaritan by picking up the victim's phone and wallet contents, and as a result, Walker could not be guilty of robbery.  (Id.)

The postconviction court rejected this claim when Walker raised it in his Rule 3.850 Motion.  (Doc. 8-2 at 991–92.)  The court first denied it on Strickland's prejudice prong because the substance of Ms. Alexander's testimony was admitted through the testimony of Detective Downs.  (Id.)  The postconviction court noted that "[w]hen asked about Ms. Alexander, Detective Downs stated that Ms. Alexander told him exactly what the Defendant believes she would have said: that she picked up the victim's cell phone and wallet and brought them inside for safekeeping."  (Id.) The court next noted that Counsel could not be ineffective for failing to offer testimony that could have opened the door to damaging evidence.  (Id. at 993.)  The court found that Ms. Alexander's stated reason for taking the victim's property could have been challenged because she "took the contents of the wallet and cell phone while the victim was present; she could have immediately returned the wallet, with its contents intact, and the cell phone to the victim."  (Id. at 992).

The postconviction court's conclusions are fully supported by the record.  At trial, Detective Downs testified that Ms. Alexander told him she took the victim's cell phone and wallet contents inside her house for safekeeping.  (Doc. 8-2 at 280–83).

9

Thus, the jury was well aware of Ms. Alexander's purported reasons for taking the victim's property. It is not ineffective assistance to not present "redundant evidence." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995); see also Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1324 n.7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative.").

Also, the postconviction court reasonably concluded that Ms. Alexander's testimony could be damaging to the defense. The victim testified that Ms. Alexander, along with Walker and another ("Spanish") man, yelled at him and asked for money. (Doc. 8-2 at 170). He testified that after Walker and the Spanish man hit him, he fell to the ground, and when he tried to stand up "the black girl [later identified as Ms. Alexander] swing – hit me again." (Id. at 171). He said all three people (including Ms. Alexander) punched him in the face. (Id. at 179). He saw that Ms. Alexander was holding his phone, and when he asked her to give it back, she refused. (Id. at 172, 184). Given the victim's testimony regarding Ms. Alexander's participation in the crime and her refusal to return Petitioner's phone when asked to do so, the postconviction court reasonably concluded that her stated reasons for taking the wallet's contents and the victim's cell phone could have been challenged by the prosecution. And because the jury was

given a "principal" jury instruction, see discussion Ground Six infra, Ms. Alexander's culpable actions could have been damaging to Petitioner's theory of defense.   See Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1004 (11th Cir. 2007) (denying ineffective assistance claim and stating "the fact remains that . . . further evidence would have opened the door to damaging personal history evidence"); Everett v. State, 54 So. 3d 464, 474 (Fla. 2010) (concluding that a decision not to call a witness based on concern over the witness's credibility was not deficient).

The state courts' rejection of Ground One was neither contrary to, or based upon an unreasonable application of, Strickland.   Nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial.   Walker is not entitled to federal habeas corpus relief on Ground One.   28 U.S.C. § 2254(d).

## B.   Ground Two

Walker asserts that Counsel was ineffective for advising him to reject a favorable plea offer.   (Doc. 1 at 5.)   He claims that, prior to trial, he was offered a ten-year plea deal, but rejected it because Counsel told him that "even if he lost in trial he would only be subjected to a maximum of five years" because there was no proof of robbery, and battery carried only a five-year sentence. (Id.)

The postconviction court held an evidentiary hearing on this claim at which Counsel and Walker both testified.   (Doc. 8-2 at

1032).  After the hearing, the postconviction court denied the ground.  (Id. at 1088-89).  The court summarized the witnesses' testimony and concluded that "[h]aving had the benefit of the testimony at the hearing, and of observing the demeanor of the witnesses, this Court finds trial counsel credible and that Defendant was not misadvised to reject the plea offer."  (Id. at 1089).  The state court's credibility determination is a finding of fact, entitled to a presumption of correctness that Walker must rebut with clear and convincing evidence.  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) ("We consider questions about the credibility and demeanor of a witness to be questions of fact."); 28 U.S.C. § 2254(e)(1) (On habeas review, "[a] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

The record supports the state courts' rejection of this claim. At the evidentiary hearing, Walker testified that Counsel advised him that the state had offered ten years in prison in exchange for a plea to attempted robbery.  (Doc. 8-2 at 1041-42).  He also testified that Counsel told him, based on the evidence, she thought he would be convicted of battery, not robbery, which carried a maximum sentence of five years.  (Id. at 1042-43).  Walker said that he felt that Counsel was "leading [him] on that she was going

to win and [he] was going to be found guilty of a lesser included offense and that was the battery." (Id. at 1045). He admitted that she did not make a recommendation to Walker on the offer. (Id. at 1042).

In contrast to Walker's testimony, Counsel testified that after she read the discovery, including the depositions, she was "convinced that [the state] had good witnesses and that they had a solid case." (Doc. 8-2 at 1064-65). She said that she provided copies of the witness depositions to Walker because she was "trying to persuade him to take the ten year . . .plea deal that the State had offered to him. I explained that if he were found guilty that he would have at least fifteen years." (Id. at 1067). She specifically testified that she never advised him to go to trial. (Id. 1174).

Walker now argues that Counsel's testimony at the evidentiary hearing was not credible because—although she testified that she felt the state had a solid case—she filed a motion after his trial in which she argued that "the complaining witness could not identify who took his wallet and that the evidence of the case doesn't meet the elements of robbery." (Doc. 1 at 6). This argument is insufficient to rebut the state courts' credibility determination. That Counsel advocated for her client and filed a motion for a new trial after he was found guilty does not suggest that she actually advised him to go to trial in the first place.

13

The postconviction court conducted an evidentiary hearing at which Counsel and Walker provided incompatible testimony.  The court resolved the conflicts in favor of Counsel and determined that she, not Walker, was the more credible witness.  This Court will not redetermine witness credibility when the testimony and demeanor of those witnesses has been observed in state court, but not here.  See Consalvo, 664 F.3d at 845 ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.").

The state courts determined the facts, and reasonably applied federal law to those facts when it concluded that he was not misadvised to reject the State's plea offer.  Walker is not entitled to federal habeas relief on Ground Two.  28 U.S.C. § 2254(d).

### C.   Ground Three

Walker asserts that Counsel was ineffective for failing to investigate and depose witness Toya Johnson.  (Doc. 1 at 7).  He asserts that Ms. Johnson would have testified that Walker's altercation with the victim "was a mere battery and during the battery Feron Alexander picked up the complaining witness['s] property on her own free will."  (Id.)  The postconviction court denied this claim on Strickland's prejudice prong.  The court explained that "had Ms. Johnson actually testified, her testimony would have been that she did not witness the robbery that the

14

Defendant committed, but witnessed a completely separate theft committed by Ms. Alexander." (Doc. 8-2 at 991). But, noted the court, "[t]he testimony that [Walker] claims should have been introduced would have been contradicted by the evidence found at the scene and the other testimony given. Ms. Johnson's proposed testimony, therefore, could not have changed the result of [Walker's] trial." (Id.)

Walker argues, without explanation, that the state courts' rejection of this claim was unreasonable. (Doc. 1 at 7). However, "Strickland places the burden on [the petitioner], not the State, to show a 'reasonable probability' that the result would have been different" had Counsel performed as Walker now argues she should have. Wong v. Belmontes, 558 U.S. 15, 27 (2009) (quoting Strickland, 466 U.S. at 694). And here, Walker only speculates that Ms. Johnson's testimony would have resulted in a different outcome at trial. See Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)); Jones v. State, 845 So. 2d 55, 64 (Fla. 2003) ("Postconviction relief cannot be based on speculative assertions."). Moreover, Walker has not offered Ms. Johnson's sworn testimony detailing what she would have said if deposed or

called to testify at trial.  See United States v. Ashimi, 932 F.2d
643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a
putative witness must generally be presented in the form of actual
testimony by the witness or on affidavit.  A defendant cannot
simply state that the testimony would have been favorable; self-
serving speculation will not sustain an ineffective assistance
claim.").  Without such a showing, Walker cannot demonstrate
Strickland prejudice.

The Florida state courts reasonably concluded that Walker did
not show Strickland prejudice from Counsel's failure to call Ms.
Johnson as a witness at trial.  Therefore, the state courts'
rejection of this claim was neither contrary to, nor based upon an
unreasonable application of, Strickland and was not based upon an
unreasonable determination of the facts in light of the evidence
presented in state court.  28 U.S.C. § 2254(d).  Walker is not
entitled to federal habeas relief on Ground Three.

### D.   Ground Four

Walker asserts that Counsel was ineffective for failing "to
investigate and assert" that the taking of the victim's property
was an afterthought and therefore constituted a theft and not a
robbery.  (Doc. 1 at 8).  He asserts that after the victim hit the
dog, "the owners are furious and an argument ensues."  (Id.)
Walker asserts that he was friends with the owner of the dog and
"proceeded to get in a physical altercation with the complaining

16

witness" during which the victim's wallet fell from his pocket and
was retrieved by Ms. Alexander. (Id.) He asserts that Ms.
Alexander took the wallet as an afterthought and "trial counsel
should have requested a special jury instruction with regards to
the taking of the property being an afterthought to the initial
incident." (Id.)

Walker raised this claim in his Rule 3.850 Motion, and the
postconviction court rejected it. (Doc. 8-2 at 477–78). First,
the court noted that when the jury instructions were read, the
court actually did provide an afterthought instruction. (Id. at
763). The court concluded that standard jury instructions are
preferred over special instructions and that had Counsel requested
a special instruction on afterthought, "such a request would have
been denied." (Id.)

It is unclear what Walker asserts Counsel could have done
differently. During opening statement, Counsel told the jury that
"this was not a robbery," but was, instead "a request by another
person, not [Walker], to help with the hospital bills." (Doc. 8-
2 at 160). During closing, she argued that there was nothing to
connect Walker to the wallet or the cell phone. (Id. at 305).
She also pointed out that "Feron Alexander admitted [to the police]
that she picked the cell phone up." (Id. at 305–06). Counsel
argued that "there's no evidence presented by the State that Mr.
Walker ever obtained any of these documents, cell phone, or wallet.

17

So I submit to you that the State has not proven its case." (Id. at 307.)

As argued by Counsel, Detective Downs testified at trial that Ms. Alexander admitted taking the victim's cell phone and wallet contents. (Doc. 8-2 at 280-83). Therefore, it would have been illogical for Counsel to argue that *Walker* took those items as an "afterthought" to battering the victim. And, as noted by the postconviction court, the trial court did provide an afterthought instruction to the jury, instructing that "[i]f you find that the taking of the property occurred as an afterthought to the use of force or violence against the victim, the taking does not constitute a robbery, but may still constitute theft." (Id. at 313). To the extent Walker wanted a different, or special, afterthought jury instruction, the state court (and by its silent affirmance, the Second DCA) already said what would have happened if such had been requested; the request would have been denied. State courts, not federal courts sitting in habeas review, are the final arbiters of state law. See Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997) (noting that it is a fundamental principle that "state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.").

The state courts reasonably concluded that Walker demonstrated neither deficient performance nor resulting prejudice from Counsel's failure to present a better afterthought defense.

Walker is not entitled to federal habeas corpus relief on Ground Four.

### E.   Ground Five

Walker asserts that Counsel was ineffective for failing to object to the prosecutor's statement in closing argument that Walker was a "cheerleader" in the incident and was, therefore, guilty as a principal. (Doc. 1 at 9). Walker appears to base Ground Five on a portion of the prosecutor's closing argument where he explained the "principal" jury instruction:

> Now, when you read this [principal] instruction, if all Mr. Walker did was stand on the sidewalk watching him and cheered them on, and say, get him, guys, get him.
>
> Even then he's a principal. Even then the Statute says he's just as guilty as everyone else. But we know that in this case, he went far, far beyond that.

(Doc. 8-2 at 296). The postconviction court rejected this claim on Strickland's performance prong, noting that it was evident that the state was merely relaying and explaining to the jury a portion of the standard instruction for principals. (Id. at 758). The court noted that "[i]f [Walker's] counsel had objected to this statement, such an objection would have been overruled." (Id. (citing Bertolotti v. State, 476 So. 2d 130 (Fla. 1985))).

Walker does not explain how the state court's rejection of Ground Five entitles him to relief under section 2254(d). Under Florida law, the "role of the attorney in closing argument is to assist the jury in analyzing, evaluating, and applying the

evidence." <u>Cardona v. State</u>, 185 So. 3d 514, 520 (Fla. 2016) (internal quotation marks omitted). Notably, the prosecutor did not argue (as Walker appears to believe) that Walker <u>was</u> a cheerleader while the victim was robbed. Rather, he explained that, even if Walker had merely encouraged the other robbers, he could be found guilty as a principal. And this argument was permissible in this case because the trial court instructed the jury on principal liability. (Doc. 8-2 at 316). <u>See</u> <u>Marman v. State</u>, 814 So.2d 1158, 1159 (Fla. 2d DCA 2002) ("If an instruction is given to the jury, counsel must be given an opportunity to address the jury on the matter."); <u>Seckington v. State</u>, 424 So. 2d 194, 195 (Fla. 5th DCA 1983) ("One of the purposes of closing arguments is to give the attorneys the opportunity to tie together for the jury the law and the facts so that the jury can give the proper legal weight to the evidence in reaching its verdict.").

Because the prosecutor's statement was allowed under Florida law, the postconviction court reasonably concluded that Counsel had no grounds on which to object, and as a result, Walker cannot demonstrate deficient performance under <u>Strickland</u>. Walker is not entitled to habeas corpus relief on Ground Five.

### F. Ground Six

Walker asserts that the evidence against him was insufficient to support his conviction for robbery. (Doc. 1 at 10). At the close of the state's case-in-chief, Walker moved for a judgment of

acquittal based upon insufficiency of the evidence.  (Doc. 8-2 at 284).  In his motion for a new trial, Walker again argued that the evidence was insufficient to support a robbery conviction. (Doc. 8-2 at 343-44).  He made the argument a third time on direct appeal.  (Id. at 381).  At each turn, Walker's arguments were rejected by the state courts.

The Due Process Clause of the Fourteenth Amendment requires the state to prove each element of the offense charged beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 315 (1979). Under Jackson, federal courts must look to state law for the substantive elements of the offense, but to federal law for the determination of whether the evidence was sufficient under the Due Process Clause.  Coleman v. Johnson, 566 U.S. 650 (2012).  For federal due process review, "[t]he [only] relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

Under Florida law:

> "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

Fla. Stat. § 812.13 (2014).  In addition to instructing the jury
on the elements of robbery (Doc. 8-2 at 312-13), the trial court
read the principal instruction and told the jury that under the
principal theory, Walker could be "treated as if he had done all
the things that the other person or persons did if [he] had a
conscious intent that the criminal act be done . . . [and] did
some act or said some words, which was intended to and which did
incite, cause, encourage, assist, or advise the other person or
persons to actually commit the crime."  (Id. at 316-17).

At trial, the victim testified that he hit a dog with his
Jeep.  (Doc. 8-2 at 164).  Worried about the dog, he stopped his
car, called 9-1-1, and got out of his car to check on the dog's
welfare.  (Id. at 165-66).  He was approached by Walker and
another man.  (Id. at 166).  Walker accused the victim of hitting
his dog.  (Id. at 167, 168).  Walker, the other man, and
eventually, a female, demanded money from the victim.  (Id. at
169, 170).  When the victim said he did not have money and that
he had called the police, Walker said, "He's a fucking immigrant.
They don't have papers.  They don't call the police.  They got the
money."  (Id. at 170).  Walker then punched the victim in the
face.  (Id. at 170-71.)  The other man also punched the victim,
causing him to fall to the ground where both men and the female,
kicked and punched him, all the while demanding money.  (Id. at
171.)  While being beaten, the victim felt someone remove his

22

wallet from his pocket.  (Id. at 172).  After the attack ceased,
the victim stood up and realized that his phone and wallet were
missing.  (Id. at 171-72).  Walker noticed that the female was
holding his phone, but when he demanded it back, she refused.
(Id. at 172).  After beating him and taking his phone and wallet,
Walker and the female ran back to their house.  (Id. at 173.)  The
victim testified that he was scared and attempted to run into the
street to stop someone.  (Doc. 8-2 at 179-80).  When the police
went into Walker's house, they found the contents of the victim's
wallet, including his children's social security cards, a Visa
debit card, and the victim's Florida driver's license.  (Id. at
218).  See also discussion supra Grounds One, Four, and Five.
Given this evidence, a rational trier of fact could have found
beyond a reasonable doubt that Walker committed the robbery (by
using force to deprive the victim of his wallet and cell phone),
either as an active participant or as a principal.  It does not
matter that the state did not prove that Walker, as opposed to one
of the other robbers, was the person who removed the victim's
wallet from his pocket.

Walker has not demonstrated that the state courts' rejection
of his insufficient evidence claims violated due process under
Jackson.  Nor has he shown that the rejections were based upon an
unreasonable determination of the facts in light of the evidence

presented at trial.  Walker is not entitled to federal habeas corpus relief on Ground Six.  28 U.S.C. § 2254(d).

### IV.  Conclusion

Based on the foregoing, Walker is not entitled to relief on the habeas claims presented here.  No allegation not specifically addressed has been found to warrant habeas relief.

Accordingly, it is ordered that:

1.    The 28 U.S.C. § 2254 petition filed by Eldridge Walker, Jr. is **DENIED.**

2.    The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Walker, deny any pending motions as moot, terminate any deadlines, and close this case.

### Certificate of Appealability[3]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find

---

[3] Under Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Upon consideration of the record, the Court declines to issue a COA. Because Walker is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida on October 26, 2022.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA:  FTMP-2
Copies to:     Eldridge Walker, Jr., Counsel of Record